POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JARRYD ANTHONY MALOUF, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IRIS ENERGY LIMITED, DANIEL ROBERTS, WILLIAM ROBERTS, BELINDA NUCIFORA, DAVID BARTHOLOMEW, CHRISTOPHER GUZOWSKI, and MICHAEL ALFRED,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jarryd Anthony Malouf ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Iris Energy Limited ("Iris" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Iris ordinary shares pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about November 17, 2021 (the "IPO" or "Offering"); and/or (b) Iris securities between November 17, 2021 and November 1, 2022, both

dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Iris touts itself as a leading owner and operator of institutional-grade, highly efficient, proprietary Bitcoin mining data centers powered by 100% renewable energy.

3.      Iris's Bitcoin mining operations purportedly generate revenue by earning Bitcoin through a combination of block rewards and transaction fees from the operation of specialized computing equipment called "miners" or "Bitcoin miners" and exchanging these Bitcoin for fiat currencies such as U.S. dollars ("USD") or Canadian dollars ("CAD") on a daily basis.

4.      Iris has three wholly-owned special purpose vehicles, referred to as "Non-Recourse SPV 1", "Non-Recourse SPV 2", and "Non-Recourse SPV 3" (collectively, the "Non-Recourse SPVs"), each of which was incorporated for the specific purpose of financing certain of the Bitcoin miners operated by the Company.

5.      On October 25, 2021, Iris filed a registration statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on November 16, 2021 (the "Registration Statement").

6.      On or about November 17, 2021, Iris conducted the IPO, issuing approximately 8.27 million of its ordinary shares to the public at the Offering price

of $28 per ordinary share for approximate proceeds to the Company of $215 million, before expenses, and after applicable underwriting discounts and commissions.

7.      On November 18, 2021, Iris filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

8.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain of Iris's Bitcoin miners, owned through its Non-Recourse SPVs, were unlikely to produce sufficient cash flow to service their respective debt financing obligations; (ii) accordingly, Iris's use of equipment financing agreements to procure Bitcoin miners was not as sustainable as Defendants had represented; (iii) the foregoing was likely to have a material negative impact on the Company's business, operations, and financial condition; and (iv) as a result, the Offering Documents and Defendants' public statements throughout the Class Period

were materially false and/or misleading and failed to state information required to be stated therein.

9.     On November 2, 2022, Iris issued a press release disclosing, among other things, that "[c]ertain equipment (i.e., Bitcoin miners) owned by [Non-Recourse SPV 2 and Non-Recourse SPV 3] currently produce insufficient cash flow to service their respective debt financing obligations, and have a current market value well below the principal amount of the relevant loans" and that "[r]estructuring discussions with the lender remain ongoing."

10.     On this news, Iris's ordinary share price fell $0.51 per share, or 15.04%, to close at $2.88 per share on November 2, 2022—a nearly **90%** decline from the Offering price.

11.     As of the time this Complaint was filed, Iris's ordinary shares continue to trade significantly below the $28 per share Offering price, damaging investors.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a)

of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Pursuant to Iris's most recent annual report on Form 20-F, as of June 30, 2022, there were 54,982,916 of the Company's ordinary shares outstanding.  Iris's ordinary shares trade on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Iris's ordinary shares located within the U.S., some of whom undoubtedly reside in this Judicial District.

16.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

17.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Iris ordinary shares pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Iris securities during the Class

Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Iris is organized under the laws of Australia with principal executive offices located at Level 12, 44 Market Street, Sydney, NSW 2000 Australia.   The Company's ordinary shares trade in an efficient market on the NASDAQ under the ticker symbol "IREN".

19.     Defendant Daniel Roberts ("D. Roberts") has served as a Co-Chief Executive Officer ("Co-CEO") and Director of the Company at all relevant times. D. Roberts signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendant William Roberts ("W. Roberts") has served as a Co-CEO and Director of the Company at all relevant times.  W. Roberts signed or authorized the signing of the Registration Statement filed with the SEC.

21.     Defendant Belinda Nucifora ("Nucifora") has served as Iris's Chief Financial Officer since May 16, 2022.

22.     Defendants D. Roberts, W. Roberts, and Nucifora are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

23.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Iris's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided

with copies of Iris's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Iris, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

24.     Iris and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

25.     Defendant David Bartholomew ("Bartholomew") has served as the Chair of Iris at all relevant times. Bartholomew signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendant Christopher Guzowski ("Guzowski") has served as a Director of Iris at all relevant times. Guzowski signed or authorized the signing of the Registration Statement filed with the SEC.

27.     Defendant Michael Alfred ("Alfred") has served as a Director of Iris at all relevant times. Alfred signed or authorized the signing of the Registration Statement filed with the SEC.

28.    Defendants D. Roberts, W. Roberts, Bartholomew, Guzowski, and Alfred are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

29.    As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Iris ordinary shares in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

30.    Iris and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

31.    The Exchange Act Defendants and Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

32.    Iris touts itself as a leading owner and operator of institutional-grade, highly efficient, proprietary Bitcoin mining data centers powered by 100% renewable energy.

33.    Iris's Bitcoin mining operations purportedly generate revenue by earning Bitcoin through a combination of block rewards and transaction fees from

the operation of specialized computing equipment called "miners" or "Bitcoin miners" and exchanging these Bitcoin for fiat currencies such as USD or CAD on a daily basis.

34.    Iris has three wholly-owned special purpose vehicles, referred to as "Non-Recourse SPV 1", "Non-Recourse SPV 2", and "Non-Recourse SPV 3", each of which was incorporated for the specific purpose of financing certain of the Bitcoin miners operated by the Company.

35.    On October 25, 2021, Iris filed the Registration Statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on November 16, 2021.

36.    On or about November 17, 2021, Iris conducted the IPO, issuing approximately 8.27 million of its ordinary shares to the public at the Offering price of $28 per ordinary share for approximate proceeds to the Company of $215 million, before expenses, and after applicable underwriting discounts and commissions.

37.    On November 18, 2021, Iris filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

**Materially False and Misleading Statements Issued in the Offering Documents**

38.    With respect to Iris's use of equipment financing agreements to procure Bitcoin miners, the Offering Documents stated, in relevant part:

We are party to equipment finance and security agreements, denominated in US dollars, pursuant to which an equipment financier has agreed to finance part of the purchase of various miners that have been delivered to us or will be delivered to us. As of September 30, 2021, the aggregate amount of the loan facilities was $53.9 million, and the aggregate amount of funds borrowed under these loans was $22.9 million. The loans carry an annual interest rate of 12% and are to repaid through monthly payments of interest and principal through September 2023. The agreements include customary restrictions and outstanding borrowings are secured by the financed mining units purchased with the loans.

39.    With respect to the capacity and overall quality of the Bitcoin miners that Iris would procure, at least in part, through its use of equipment financing agreements, the Offering Documents stated, *inter alia*:

As of September 30, 2021, we have entered into binding hardware purchase contracts with Bitmain Technologies Limited, a leading producer of Bitcoin mining hardware, to acquire new generation miners, Antminer S19j and Antminer S19j Pro, with an aggregate nameplate hashrate capacity of 14.5 EH/s and deliveries commencing in October 2021 and ending in September 2023, which is expected to increase our operating and contracted nameplate hashrate capacity to 15.2 EH/s and result in an average nameplate hardware efficiency of approximately 30 W/TH.

40.    With respect to the purported efficiency and overall operational quality of Iris's Bitcoin mining operations, the Offering Documents stated, *inter alia*:

As both the owner and operator of our hardware and infrastructure, we are directly incentivized to optimize each component of our value chain. Learnings and efficiency gains can then be applied across our entire portfolio.

In addition, we believe that we are able to identify and respond to operational issues in a more efficient and timely manner than would be

the case under an outsourced hosted model. We believe this allows us to maximize operating performance as well as hardware life.

While outsourcing infrastructure and operations and maintenance to third-parties may result in near-term returns and scale, short-term contractual arrangements may result in increased counterparty risk (e.g. potential non-performance, delays and disputes) and renewal risk.

41.     The statements referenced in ¶¶ 38-40 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) certain of Iris's Bitcoin miners, owned through its Non-Recourse SPVs, were unlikely to produce sufficient cash flow to service their respective debt financing obligations; (ii) accordingly, Iris's use of equipment financing agreements to procure Bitcoin miners was not as sustainable as Defendants had represented; (iii) the foregoing was likely to have a material negative impact on the Company's business, operations, and financial condition; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

42.    The Class Period begins on November 17, 2021, when Iris's ordinary shares began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions contained in the Offering Documents, as referenced in ¶¶ 38-40, *supra*.

43.    On February 9, 2022, Iris issued a press release reporting the Company's second quarter 2022 results for the period ended December 31, 2021. That press release quoted Defendant D. Roberts, who stated, in relevant part, that Iris "is on track to be one of the largest listed Bitcoin miners with 15 EH/s3 of hardware secured[.]"

44.    Also on February 9, 2022, Iris filed a report of foreign issuer on Form 6-K with the SEC, appended to which were the Company's Unaudited Interim Consolidated Financial Statements for the Three and Six Months ended December 31, 2021 (the "2Q22 6-K").  With respect to the Company's equipment financing agreements to procure Bitcoin miners, the 2Q22 6-K stated, in relevant part:

> The [Company] has entered into equipment finance and security agreements pursuant to which an equipment financier has agreed to finance the purchase of various mining hardware that have been delivered or yet to be delivered. These facilities carry an annual contractual interest rate of 12% and are denominated in United States dollars. The facilities are repaid through blended monthly payments of interest and principal with the final payment due to the financier on 25 September 2023.

45.     The 2Q22 6-K also purported to warn that Iris's "ability . . . to continue as a going concern depends upon the [Company] maintaining sustained positive free operating cash flows and securing additional capital to fund the contracted mining hardware purchases and infrastructure spend, as part of its growth plan[,]" while simultaneously assuring investors that "[t]he strategy to mitigate these risks and uncertainties is to execute a business plan aimed at continued operational efficiency, revenue growth, improving overall mining profit, managing operating and capital expenditure and working capital requirements, and securing additional financing, as needed."  The Company's assurances regarding the strength of its business plan effectively negated any meaningful disclosure of risk that its cautionary statements might have otherwise provided.

46.     Similarly, the 2Q22 6-K assured investors that Iris's "ability to continue as a going concern and meet its debts and commitments as they fall due, are . . . dependent upon a number of factors which have been considered in preparing a cash flow forecast over the next 12 months to consider the going concern of the [Company] and the ability of the [Company] to achieve its growth plans[,]" including the following "key assumptions":

- the Bitcoin price remaining at a level higher than prior financial years and a lag in global hashrate, thereby contributing to sustained forecast positive free cash flow; and

- the [Company]'s contracted mining hardware purchases and infrastructure spend will be funded by a combination of available

cash (A$351.7 million as at 31 December 2021), operating cashflow and additional financing. Of the total contracted mining hardware purchases, US$326.7 million (A$450 million) is due to be paid before 31 December 2022, with a further US$172.4 million (A$237.5 million) due in 2023 giving a total contracted mining hardware purchases of US$449.1 million (A$687.5 million) (including estimated shipping and provincial sales tax) as at 31 December 2021.

47.    On March 28, 2022, Iris issued a press release announcing the closing of a $71 million equipment financing facility with a Bitcoin company called NYDIG.  That press release highlighted that this was the "[t]hird facility secured with NYDIG, further cementing [a] long-term partnership"; that the facility was "[s]ecured by 19,800 Bitmain S19j Pro miners"; and that "~10 EH/s of the Company's total stock of contracted miners remain unencumbered, providing substantial balance sheet flexibility to secure additional non-dilutive funding in due course."

48.    The same March 28, 2022 press release also quoted Defendant D. Roberts, who stated, in relevant part:

> "We are delighted to again partner with an industry leader such as NYDIG who have been a long-standing supporter of our business. This is our third equipment financing facility together and we look forward to formalizing additional loan facilities as miners continue to be delivered and installed. This transaction further demonstrates the capital structure benefits in having a strong balance sheet and owning and controlling our own infrastructure."

> "With substantial equity raised to date, meaningful operational cashflow and a 15 EH/s installation schedule which remains on track, we are pursuing a number of other sources of non-dilutive funding to

continue the Company's rapid growth trajectory and delivery of shareholder value, noting that we as management continue to hold approximately one quarter of the shares on issue."

49.     On May 11, 2022, Iris filed a report of foreign issuer on Form 6-K with the SEC, appended to which were the Company's Unaudited Interim Consolidated Financial Statements for the Three and Nine Months ended March 31, 2022 (the "3Q22 6-K").  With respect to the Company's equipment financing agreements to procure Bitcoin miners, the 3Q22 6-K stated, in relevant part:

> During the year ended 30 June 2021, the [Company] entered into equipment finance and security agreements pursuant to which an equipment financier agreed to finance the purchase of various mining hardware that have been delivered or yet to be delivered. These facilities carry an annual contractual interest rate of 12% and are denominated in United States dollars. The facilities are repaid through blended monthly payments of interest and principal with the final payment due to the financier on 25 September 2023.

50.     The 3Q22 6-K also contained substantively the same statements as referenced in ¶ 45, *supra*, purporting to warn that Iris's ability to continue as a going concern depends upon, among other things, maintaining sustained positive free operating cash flows and securing additional capital to fund contracted mining hardware purchases, while simultaneously assuring investors regarding the Company's strategy to mitigate these risks  through, among other things, continued operational efficiency and securing additional financing.

51.     In addition, the 3Q22 6-K contained substantively the same statements as referenced in ¶ 46, *supra*, regarding Iris's ability to meet its debts and

commitments as they fall due, while providing the following updated key assumption:

- the [Company]'s contracted mining hardware purchases and infrastructure spend will be funded by a combination of available cash (A$210.7 million as at 31 March 2022), operating cashflow and additional financing (including A$31.4 million financing committed to the [Company] which as of 31 March 2022 remained undrawn). Of the total contracted mining hardware purchases, US$285.7 million (A$381.9 million) is due to be paid before 31 March 2023, with a further US$90.5 million (A$120.9 million) due beyond 31 March 2023 giving a total contracted mining hardware purchases of US$376.2 million (A$502.8 million) (including estimated shipping and provincial sales tax) as at 31 March 2022.

52.     On June 7, 2022, Iris issued a press release announcing an investor update for May 2022.  That press release advised, *inter alia*, that "[m]ultiple debt processes remain underway, with discussions involving various aspects of the capital structure, for example, equipment financing similar to the recent $71m NYDIG facility (1.98 EH/s of miners secured)," while simultaneously assuring investors that "[t]he Company remains focused on prudently assessing various options and ensuring that any decisions consider an appropriate long-term capital structure for the Company."

53.     In addition, the same June 7, 2022 press release downplayed the severity of debt from equipment financing agreements by highlighting in its "Business summary" that there was "[n]il corporate-level debt", while

16

acknowledging in a footnote that "[e]quipment financing is limited recourse financing within wholly owned subsidiaries of the Company."

54.    On June 21, 2022, Iris issued a press release providing an updated operating and capital expenditure guidance, stating, in relevant part:

> The Company has explored multiple financing options presented to it in recent months, and has determined that maintaining balance sheet flexibility is prudent having regard to market conditions and available financing terms.

> As market conditions have deteriorated, the Company continues to believe this is the prudent approach. As a result, the Company expects to defer major additional capital expenditure until the current market uncertainty subsides and financing terms improve. The Company will continue to monitor funding markets closely, and if conditions become favorable, the Company expects to explore raising additional capital.

55.    The same June 21, 2022 press release also continued to downplay the severity of debt from equipment financing agreements by stating that "[t]he Company currently has no corporate debt on its balance sheet", while acknowledging in a footnote that "[e]xisting equipment financing is limited recourse financing within wholly owned subsidiaries of the Company."

56.    On September 13, 2022, Iris issued a press release reporting the Company's full year 2022 results for the period ended June 30, 2022.  That press release quoted Defendant D. Roberts, who represented, in relevant part: "Looking forward, the recent volatility in the Bitcoin price and related industry challenges reaffirms our confidence in our long-term, vertically integrated strategy.  We remain

focused on building a multi-decade, institutional grade, infrastructure platform while maintaining balance sheet discipline."

57.     The same September 13, 2022 press release also continued to downplay the severity of debt from equipment financing agreements, stating, in relevant part, that "[c]ash and cash equivalents as of June 30, 2022 was $110.0 million, with no corporate debt held by the Company on its balance sheet", while acknowledging in a footnote that "[e]xisting equipment financing ($109.4 million as of June 30, 2022) is limited recourse financing within wholly owned subsidiaries of the Company."

58.     Also on September 13, 2022, Iris filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended June 30, 2022 (the "2022 20-F"). That filing contained substantively the same statements as referenced in ¶ 40, *supra*, regarding the purported efficiency and overall operational quality of Iris's Bitcoin mining operations.

59.     With respect to Iris's use of equipment financing agreements to procure Bitcoin miners, the 2022 20-F stated, in relevant part:

> We are party to equipment finance and security agreements, denominated in US dollars, pursuant to which an equipment financier has agreed to finance part of the purchase of various miners that have been delivered to us or will be delivered to us. As of June 30, 2022, the aggregate amount drawn under the loan facilities was $109.4 million.

60.     With specific respect to Iris's Bitcoin miner equipment financing agreements with NYDIG, the 2022 20-F stated, in relevant part:

> The facility established pursuant to this agreement (the "NYDIG Facility") has a contractual term of 25 months and is secured by 19,800 Bitmain S19j Pro miners (1.98 EH/s), as well as the digital assets mined therewith, with an applicable interest rate of 11% per annum. The NYDIG Facility is repaid through blended monthly payments of principal and interest with the final payment due April 2024. As of June 30, 2022, the facility was fully utilized with $71.2 million of borrowings outstanding.
>
> The NYDIG Agreement contains customary affirmative and negative covenants applicable to the subsidiary borrower, but not to Iris Energy Limited. These include restrictions on our ability to incur liens on the equipment securing the NYDIG Facility, consummate mergers, dispose of all or substantially all of our assets, consummate a change of control, make certain payments with respect to our equity interests or make certain investments. The NYDIG Agreement also contains customary events of default.

61.     With respect to Iris's other Bitcoin miner equipment financing agreements, the 2022 20-F stated, in relevant part:

> On December 15, 2020 and May 25, 2021, certain wholly-owned subsidiaries of Iris Energy Limited entered into master equipment finance and security agreements with a certain financier, pursuant to which such financier agreed to provide financing (the "Other Financing Agreements").
>
> Outstanding borrowings are secured by the financed mining units purchased with the loans. The loans carry an annual interest rate of 12% and are to repaid through monthly payments of interest and principal through September 2023. As of June 30, 2022, we had $38.2 million of loans outstanding under the facilities.
>
> The Other Financing Agreements include customary affirmative and negative covenants applicable to the subsidiary borrowers, but not to

Iris Energy Limited. These include restrictions on our ability to incur liens on the equipment securing the loans thereunder, consummate mergers, dispose of all or substantially all of our assets or consummate a change of control. The Other Financing Agreements also contain customary events of default.

62.    Appended as exhibits to the 2022 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants D. Roberts, W. Roberts, and Nucifora certified that "the [2022 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "the information contained in the [2022 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

63.    The statements referenced in ¶¶ 42-62 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain of Iris's Bitcoin miners, owned through its Non-Recourse SPVs, were unlikely to produce sufficient cash flow to service their respective debt financing obligations; (ii) accordingly, Iris's use of equipment financing agreements to procure Bitcoin miners was not as sustainable as Defendants had represented; (iii) the foregoing was likely to have a material negative impact on the Company's business, operations,

and financial condition; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Emerges**

64.    On November 2, 2022, during pre-market hours, Iris issued a press release (the "November 2022 Press Release"), disclosing, *inter alia*, that "[c]ertain equipment (i.e., Bitcoin miners) owned by [Non-Recourse SPV 2 and Non-Recourse SPV 3] currently produce insufficient cash flow to service their respective debt financing obligations, and have a current market value well below the principal amount of the relevant loans" and that "[r]estructuring discussions with the lender remain ongoing."

65.    With specific respect to each Non-Recourse SPV's respective equipment financing debt obligations, and the inability of Non-Recourse SPV 2 and Non-Recourse SPV 3 to produce sufficient cash flow to service those debts, the November 2022 Press Release disclosed, in relevant part:

> As at September 30, 2022, the Non-Recourse SPVs had the following principal amounts outstanding under their respective limited recourse equipment financing facilities:
>
> - Non-Recourse SPV 1 – $1 million, secured against 0.2 EH/s of miners.
>
> - Non-Recourse SPV 2 – $32 million, secured against 1.6 EH/s of miners.
>
> - Non-Recourse SPV 3 – $71 million, secured against 2.0 EH/s of miners.

* * *

The secured miners owned by each of Non-Recourse SPV 2 and Non-Recourse SPV 3 . . . in aggregate:

- Are currently capable of generating an indicative $2 million of Bitcoin mining monthly gross profit[], compared to aggregate required monthly principal and interest payment obligations of $7 million.

- Have a market value which the Company currently estimates to be approximately $65 to $70 million[], relative to an aggregate $103 million principal amount of loans outstanding as at September 30, 2022.

66.     With specific respect to Iris's ongoing discussions with the relevant lender for Non-Recourse SPV 2's and Non-Recourse SPV 3's respective equipment financing agreements, the November 2022 Press Release stated, in relevant part:

Non-Recourse SPV 2 and Non-Recourse SPV 3 are engaged in discussions with their lender and reached an agreement for a two-week deferral of scheduled principal payments originally due under both equipment financing arrangements on October 25, 2022, to November 8, 2022.

Unless a suitable agreement is reached with the lender on modified terms for both equipment financing arrangements, the Group does not intend to provide further financial support to Non-Recourse SPV 2 and Non-Recourse SPV 3.

67.     With respect to Iris's anticipated default on Non-Recourse SPV 2's and Non-Recourse SPV 3's respective equipment financing agreements, and the corresponding negative impact this would have on Company's future operations and financial results, the November 2022 Press Release stated, in relevant part:

In this case, the Company expects that neither of those Non-Recourse SPVs will be able to make the scheduled principal payment on November 8, 2022, which would result in a default for those Non-Recourse SPVs under their respective limited recourse equipment financing arrangements.[5]

. . . . The [Company] is exploring opportunities to utilize its data center capacity that may become available in the event the [Company] elects to no longer provide financial support to these financing arrangements and the lender forecloses on the equipment owned by the relevant special purpose vehicles.

\* \* \*

[5] Such default would permit the lender to declare the entire $103 million aggregate principal amount of the relevant equipment financing facilities to be immediately due and payable by Non-Recourse SPV 2 and Non-Recourse SPV 3. We expect that Non-Recourse SPV 2 and Non-Recourse SPV 3 will not have sufficient funds to repay such equipment financing facilities, in which case such lender could enforce its security interest and foreclose on the Bitcoin miners owned by Non-Recourse SPV 2 and Non-Recourse SPV 3, respectively, which could result in the loss of such miners and materially reduce the Company's operating capacity, and could also lead to bankruptcy or liquidation of the relevant Non-Recourse SPVs.

68.     On this news, Iris's ordinary share price fell $0.51 per share, or 15.04%, to close at $2.88 per share on November 2, 2022—a nearly **90%** decline from the Offering price.

69.     As of the time this Complaint was filed, Iris's ordinary shares continue to trade significantly below the $28 per share Offering price, damaging investors.

70.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Iris ordinary shares pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Iris securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

72.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Iris securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Iris or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions.

73.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

74.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

75.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Iris;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Iris to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Iris securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

76.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

77.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Iris securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Iris securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

78.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

79.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

80.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

81.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

82.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Iris securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Iris securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

83.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market

for Iris securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Iris's finances and business prospects.

84.     By virtue of their positions at Iris, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

85.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control. As the senior managers and/or directors of Iris, the Exchange Act Individual Defendants had knowledge of the details of Iris's internal affairs.

86.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Iris.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Iris's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Iris securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Iris's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Iris securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

87.     During the Class Period, Iris securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Iris securities at

prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Iris securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Iris securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

88.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

90.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.    During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Iris, and conducted and participated, directly and indirectly, in the conduct of Iris's business affairs.  Because of their senior positions, they knew the adverse non-public information about Iris's misstatement of income and expenses and false financial statements.

92.    As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Iris's financial condition and results of operations, and to correct promptly any public statements issued by Iris which had become materially false or misleading.

93.    Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Iris disseminated in the marketplace during the Class Period concerning Iris's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Iris to engage in the wrongful acts complained of

herein.   The Exchange Act Individual Defendants, therefore, were "controlling persons" of Iris within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Iris securities.

94.   Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Iris.   By reason of their senior management positions and/or being directors of Iris, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Iris to engage in the unlawful acts and conduct complained of herein.   Each of the Exchange Act Individual Defendants exercised control over the general operations of Iris and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

95.   By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Iris.

## COUNT III

### (Violations of Section 11 of the Securities Act Against the Securities Act Defendants)

96.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

97.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

98.    The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

99.    Iris is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

100.   As issuer of the shares, Iris is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

101.   None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

102.   By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

103.   Plaintiff acquired Iris shares pursuant and/or traceable to the Offering Documents for the IPO.

104.    Plaintiff and the Class have sustained damages.    The value of Iris ordinary shares has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

### (Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)

105.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

106.    This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

107.    The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Iris within the meaning of Section 15 of the Securities Act.    The Securities Act Individual Defendants had the power and influence and exercised the same to cause Iris to engage in the acts described herein.

108.    The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

109.   By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 7, 2022              Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski

Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: D9D7B14C-8A4B-411C-8CB2-794891F7A5B0

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, _Jarryd Anthony Malouf_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Iris Energy Limited ("Iris" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire Iris securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Iris securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in Iris securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: D9D7B14C-8A4B-411C-8CB2-79489 1F7A5B0

8.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed ___11/27/2022_____
                        **(Date)**

                                    **DocuSigned by:**

                        _____
                                    **(Signature)**
                                    EF6EF75A159F4C0...

                        ___Jarryd Anthony Malouf_____
                                    **(Type or Print Name)**

**Iris Energy Limited (IREN)**                                                 **Jarryd Anthony Malouf**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 12/28/2021 | 1,029 | $16.9727 |
| Purchase | 12/28/2021 | 7 | $16.8999 |